LaSalle National Bank, a National Banking Association, as Trustee Under Trust Agreement Dated April 15, 1947, and Known as Trust No. 6124, Plaintiff-Appellee, v. Village of Skokie, a Municipal Corporation, Defendant-Appellant.

Gen. No. 51,673.

First District, First Division.

March 10, 1969.

Harvey Schwartz, Corporation Counsel, of Skokie, for appellant.

Arvey, Hodes & Mantynband, of Chicago (J. Herzl Segal and Walter V. Lesak, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

This is a zoning case involving a parcel of unimproved land located at the southwest corner of Dempster Street and Crawford Avenue in the Village of Skokie. This parcel extends 150 feet west of Crawford Avenue on the south side of Dempster Avenue and 125 feet south of Dempster Avenue on the west side of Crawford Avenue. It was acquired by the plaintiff, as trustee, its sole beneficiary, by various conveyances between 1942 and 1954.

On May 7, 1946, Skokie adopted a zoning ordinance, commonly known as the Zoning Ordinance of 1946. Under this ordinance the subject parcel of property was placed in a Class E Commercial District. Gasoline filling stations were one of the uses permitted in that district. In 1956, Skokie amended the Zoning Ordinance of 1946 and divided all land lying within the limits of Skokie into eleven "use" districts. The parcel here involved was placed in a B–2 Commercial District which permitted gasoline filling stations. On September 15, 1959, Skokie amended the Zoning Ordinance of 1956 deleting gasoline filling stations as a permitted use in a B–2 Commercial District and placed filling stations within a B–3 Business District.

On November 15, 1961, plaintiff petitioned the Village of Skokie to reclassify this property from a B–2 Commercial District zone classification to a B–3, for the purpose of erecting a gasoline filling station. The Village denied it. Thereafter plaintiff filed a complaint

for declaratory judgment seeking to adjudge the 1956 Zoning Ordinance and the amendment of September 15, 1959, arbitrary, discriminatory, confiscatory, unconstitutional, invalid and void. Subsequently, plaintiff filed an amended complaint and a supplemental complaint for injunction to enjoin Skokie from enforcing its zoning law as amended, as it affects the parcel here involved.

During the course of the proceedings before the trial court in July, 1965, the Corporation Counsel of Skokie requested the Village Board of Trustees to reconsider the reclassification of a portion of the plaintiff's property from a B–2 district zone to a B–3 district zone, for the purpose of allowing a filling station on the west 150 feet of the subject parcel. This matter was referred by the Board of Trustees to the Plan Commission which, after holding public hearings, recommended that the request be denied. The President and the Board of Trustees concurred.

The trial court referred this cause to a Master in Chancery who after holding extensive hearings reported his findings to the court and recommended that a decree be entered granting relief. The trial court, after overruling Skokie's objections and exceptions to the Master's report, decreed on June 15, 1966, that the Skokie zoning ordinance as amended, insofar as it affects the subject property, is unconstitutional and issued an injunction restraining Skokie from enforcing it.

On appeal, the defendant contends mainly that (1) plaintiff did not overcome the burden of the presumption of validity of the ordinance by clear and convincing evidence and (2) the legislative judgment must be conclusive where there is a fair difference of opinion concerning the reasonableness of a classification.

Defendant relies on Jans v. City of Evanston, 52 Ill App2d 61, 201 NE2d 663.

"A presumption exists in favor of the validity of a zoning ordinance and the one who attacks such

106

an ordinance has the burden of overcoming the presumption by proving with clear and convincing evidence that as applied to him, it is arbitrary and unreasonable and is without substantial relation to the public health, morals, safety and welfare."

Crawford Avenue runs in a north-south direction. It is not a State highway, but it is one of the important north-south streets in the Village of Skokie. Dempster is an Illinois highway route running from Lake Michigan on the east through the Village of Skokie and farther to the west. Dempster Street acts as a feeder for motor traffic to Edens Expressway which is approximately one and one-half miles west of the subject property and also to the Illinois Tollway which is six miles further west. The actual land uses of the immediate area surrounding the subject property are as follows:

The northwest corner is occupied by a gasoline station. Proceeding west on Dempster Street for five blocks we find a medical office, a food mart or supermarket and a drugstore, a parking lot for the supermarket, another parking area, a Chinese restaurant, a bakery, a drive-in cleaning establishment, vacant parcels, a chemical company, a tile company, a vacant area, a medical office building, a conveyor company, a gasoline station and eight single-family residences.

At the southwest corner and proceeding west we have 250 feet of vacant, a Chinese carry-out restaurant, a travel agency, a vacant store formerly used for a beauty shop, another vacant store formerly used for retail sale of ice cream, a dentist's office, vacant, a real estate firm (beneficial owner of subject property), and vacant zoned R–2 and R–1 for residential uses.

At the southeast corner and proceeding east there are a large garden and patio center, a butcher shop, a Community Center, a parking area, three blocks zoned R–2 for single-family residences; a parking area, a drive-in restaurant and another restaurant.

107

The northeast corner is occupied by a restaurant including a parking area, and proceeding east there are 480 feet of vacant zoned B–2, a donut shop, a hamburger shop, a parking lot, a snack shop, a barber shop and beauty parlor, a meat market and grocery, vacant, electrical supply office, automobile supply store, a bicycle shop, hardware store, a chop suey restaurant, a pizza restaurant, a beauty shop, drugstore, barber shop, a billiard room and a real estate office.

There are large areas to the north and south of Dempster Street classified in the R–1 and R–2 category and limited to single-family dwellings. Dempster Street is in the B–2 zone for several blocks in either direction from Crawford Avenue with certain exceptions which are zoned R–1 and R–2.

█ Zoning litigation involving the Village of Skokie was considered by the Supreme and Appellate courts of our State in numerous cases. The Village is attempting to create a zoning policy to correct a lack of policy and the errors of the past. David Einhorn, Skokie's City Planner testified:

> "It is the zoning years ago which caused the kind of scattered business development that you now see on Dempster Street which later filled in further in business use."

Skokie's failure to adopt a zoning policy resulted in the establishment of some uses on Dempster Street and elsewhere which are nonconforming. Skokie is attempting to bring about some zoning order and eliminate, eventually, nonconforming uses. However desirable this end might be, it must be accomplished without jeopardizing vested rights.

Plaintiff's witnesses testified that the highest and best use of the subject property would be a gasoline filling station, taking into consideration the fact that the property is compatible with properties located in and near

108

this intersection as well as the character of Dempster Street itself. This intersection is one of the most heavily travelled in the North Shore suburbs. The evidence before the trial court also showed unquestionably that a gasoline station would bring the holders of the fee the highest return and at the same time would have little depreciatory effect upon the surrounding property or the community as a whole.

Most of the single-family homes were built before the change in the zoning ordinance precluded gasoline stations in the B–2 classification. The people moving into the area had full knowledge that a gasoline station could be built on the corner.

There is no evidence in the record of any change in the conditions which warrants the passage of the 1959 amendment to the zoning ordinance removing gasoline filling stations as a permitted use. Defendant offered no evidence to rebut or contradict testimony of the plaintiff's witnesses. The record shows only general statements of the defendant's witnesses that the site could be developed for a B–2 use.

Mere difference of opinion of witnesses does not make positive the presumption that an ordinance is valid. As stated in Atkins v. County of Cook, 18 Ill2d 287, 297, 163 NE2d 826, 832 (1960) :

> "In all cases of this nature (zoning) there is a conflict of opinion testimony. The credibility of witnesses is of great importance."

The Master in Chancery saw and heard the witnesses, their qualifications, opinions and their reasons. The trial court approved and adopted the findings and conclusions of the Master.

The defendant also maintains that where room exists for a fair difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. This argument is sound as far

as it goes but is not completely conclusive. It is the court's duty to determine whether the legislative judgment be upheld. In Fiore v. City of Highland Park, 76 Ill App2d 62, 71, 221 NE2d 323, 328 (1967), the court said:

> "We recognize that the zoning ordinance adopted by the defendant is presumed valid, and the burden of showing it unreasonable and oppressive, as applied to plaintiffs' land rested upon them. Camboni's, Inc. v. Du Page County, 26 Ill2d 427, 432, 187 NE2d 212 (1963); First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 225, 130 NE2d 267 (1955). In challenging the ordinance's validity as applied to their property, the burden was on the plaintiffs to overcome this presumption, and to prove by clear and convincing evidence that the ordinance was unreasonable and unrelated to public health, safety or welfare. Bennett v. City of Chicago, 24 Ill2d 270, 273, 274, 181 NE2d 96 (1962); Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177 (1964).
>
> "Due to this presumption, if it appears from all of the evidence that there is justification for a legitimate difference of opinion as to the reasonableness of the ordinance, the legislative judgment of the City must then be upheld. Urann v. Village of Hinsdale, 30 Ill2d 170, 175, 195 NE2d 643 (1964); First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 226, 130 NE2d 267 (1955); Bowler v. Village of Skokie, 57 Ill App2d 321, 325, 201 NE2d 117 (1965). However, the fact that there is a difference of opinion among the witnesses, lay and expert, does not mean that the court must find that the reasonableness of the ordinance is debatable and, hence, uphold the ordinance. In cases of this nature, a court must expect differences of opinion. It is for the court to determine from all of the facts

whether the differences of opinion are reasonable and justifiable. Myers v. City of Elmhurst, 12 Ill2d 537, 544, 147 NE2d 300 (1958); LaSalle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 47, 145 NE2d 65 (1957)."

Skokie further maintains that there is no need for another gasoline filling station where there are fifteen stations already; that zoning is an exercise of police power and cannot be used to give economic advantage to the owner of a single parcel of land over surrounding owners; and that the present zoning classification imposes no burden on plaintiff or its property that is not common to hundreds of other property owners and properties. The plaintiff purchased the property here involved many years before the zoning amendment was adopted. There is no evidence in the record of any change in conditions which warrants the passage of the 1959 amendment to the zoning ordinance affecting the plaintiff's property. The plaintiff relied upon the zoning in effect at the time of the purchase. The need or lack of need of gasoline filling stations nor the alleged economic advantage to owners of property along Dempster Street is relevant to the legal issue here involved. We agree with the plaintiff that the existing pattern of land uses prior to September, 1959, which set the pattern for establishing filling stations along Dempster Street and the fact that some of them were unsuccessful or unprofitable is not a reason for the zoning restriction in this case.

In LaSalle Nat. Bank v. Village of Skokie, 62 Ill App2d 82, 93, 210 NE2d 578, 584 (1966), the court said:

"Similarly, in the instant case, we believe that considering the business character of Dempster Street and the presence of numerous gasoline service stations in the vicinity of the subject property, the use of such property for a gasoline service sta-

111

tion would be entirely in keeping with such commercial character. The presence of single family residences to the north does not make reasonable the prohibition of such use.

. . . . . .

"In the instant case, the defendant has pointed out that there are a total of fifteen gasoline service stations on Dempster Street within the corporate limits of the defendant village. One witness had testified that in his opinion the number of existing gasoline service stations on Dempster Street are sufficient to serve the needs of the community. Obviously, a gasoline filling station on an arterial highway such as Dempster Street does not rely upon the community as its source of customers. The 20,-000 or 25,000 motor vehicles a day passing this site are not all from the immediate community, and we do not feel that it is the office of this court to determine the feasibility of using the subject property for a gasoline service station from an economic standpoint."

██ Skokie claims that a gasoline service station will create additional traffic and danger resulting therefrom, increased noise, glare from additional light and possibility of noxious odors. These objections apply also to many of the uses permitted under the B–2 category. Dempster Street is commercial in character. The elimination of a gasoline filling station use from the B–2 classification in its specific application to the subject property is arbitrary and confiscatory without any relative gain to the public.

The decree of the Circuit Court is affirmed.

Affirmed.

MURPHY and DEMPSEY, JJ., concur.